# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY N. PRYOR and WARREN E.
SPIVEY, JR., Individually and on behalf
of all others similarly situated,

                Plaintiffs,

             v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,

                Defendant.

:     CIVIL ACTION
:
:     NO. 00-CV-3242
:
:
:
:
:
:
:
:
:

---

## DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

David P. Bruton
Michael W. McTigue Jr.
Theodore F. Haussman, Jr.
James J. Dougherty
**DRINKER BIDDLE & REATH LLP**
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Attorneys for Defendant
National Collegiate Athletic Association

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION.....................................................................................................1

ARGUMENT.............................................................................................................2

I.     THE "INCREDIBLE, SHRINKING" CASE.....................................................2

II.    PLAINTIFFS CANNOT SEEK CERTIFICATION
     OF LIABILITY CLASSES ONLY.......................................................................3

     A.    The NCAA's Waiver Process Precludes Class Wide
           Liability Determinations ...............................................................3

     B.    The Racial Discrimination Classes Must Be
           Examined On A Case-By-Case Basis .........................................4

     C.    The Liability Phase Of The Rehabilitation Act Claim
           Includes A Case-By-Case Reasonable Accommodation
           Inquiry..........................................................................................9

III.   PLAINTIFFS CANNOT CURE THEIR PREDOMINANCE
     AND SUPERIORITY PROBLEMS BY INVOKING
     RULE 23(c)(4)(A) ...........................................................................................12

     A.    Plaintiffs' Proposed Liability Only Class Trial Would
           Violate The NCAA's Seventh Amendment Rights ...................13

     B.    Rule 23(c)(4)(A) Cannot Be Used To Conjure Up A
           Class Where The Causes Of Action, If Tried As A
           Whole, Would Not Satisfy Predominance And/Or
           Superiority...................................................................................15

     C.    Plaintiffs' Suggested Rule 23(c)(4)(A) Panacea Does Not
           Affect Their Inability To Demonstrate Superiority ...................20

IV.   PLAINTIFFS CANNOT RE-WRITE *CURETON* TO AVOID
     THE IMPOSITION OF *RES JUDICATA* AND COLLATERAL
     ESTOPPEL HERE ...........................................................................................22

CONCLUSION .......................................................................................................24

**TABLE OF AUTHORITIES**

**CASES**

*Adams v. Henderson*, 197 F.R.D. 162 (D. Md. 2000) ........................................................19

*Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978)........................................13

*Alexander v. Choate*, 469 U.S. 287 (1985) .......................................................................10

*Alexander v. Sandoval*, 532 U.S. 275 (2001)......................................................................7

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402
    (5th Cir. 1998)................................................................................13, 14, 16, 17, 20, 21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................19, 21

*Arch v. American Tobacco Co.*, 175 F.R.D. 469 (E.D. Pa. 1997) ....................................18

*Augustin v. Jablonsky*, No. 99-CV-3126, 2001 U.S. Dist. LEXIS 10276
    (E.D.N.Y. Mar. 8, 2001) ...........................................................................................14, 21

*BMW of N. Am. v. Gore*, 517 U.S. 559 (1996)..................................................................15

*Barabin v. Aramark Corp.*, No. 02-8057, 2003 U.S. App. LEXIS 3532
    (3d Cir. Jan. 24, 2003) .................................................................................................19

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ................................14, 21

*Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157 (S.D.N.Y. 2003) .............................17

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999)..............................................................17

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ................................................15

*Boston's Children First v. Boston Sch. Comm.*, 183 F. Supp. 2d 382
    (D. Mass. 2002).............................................................................................................7

*Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988).........................................................10

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .............13, 16, 17, 21, 22

*Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D. 209
    (D. Conn. 1999) ...........................................................................................................18

*Colston v. Maryland Cup Corp.*, No. B-76-235,
    1978 U.S. Dist. LEXIS 15383 (D. Md. Sept. 21, 1978) .........................................11, 12

*Comfort v. Lynn Sch. Comm.*, 263 F. Supp. 2d 209 (D. Mass. 2003) .................................7

*Cotter v. City of Boston*, 323 F.3d 160 (1st Cir.),
    *cert. denied*, 124 S. Ct. 179 (2003) ...........................................................................7, 9

*Easley ex rel. Easley v. Snider*, 36 F.3d 297 (3d Cir. 1994) ............................................10

*Hammons v. Folger Coffee Co.*, 87 F.R.D. 600 (W.D. Mo. 1980) ....................................11

*Harrison v. Simon*, 91 F.R.D. 423 (E.D. Pa. 1981) ........................................................11

*Huegel v. City of Easton*, No. 00-CV-5077, 2002 U.S. Dist. LEXIS 22273
    (E.D. Pa. Oct. 22, 2002) ............................................................................................19

*In re Inter- Op Hip Prothesis Liab. Litig.*, 204 F.R.D. 359
    (N.D. Ohio 2001) .......................................................................................................21

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217
    (W.D. Mich. 1998) .....................................................................................................18

*Johnson v. Board of Regents*, 106 F. Supp. 2d 1362 (S.D. Ga. 2000),
    *aff'd*, 263 F.3d 1234 (11th Cir. 2001) .........................................................................7

*Kilgoar v. Colbert County Bd. of Educ.*, 578 F.2d 1033 (5th Cir. 1978)......................22, 23

*Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991) ...........................................22

*Manning v. City of Auburn*, 953 F.2d 1355 (11th Cir. 1992) ...........................................23

*McDonald v. Prudential Ins. Co. of Am.*, No. 95 C 5186,
    1999 U.S. Dist. LEXIS 1974 (N.D. Ill. Feb. 19, 1999) ...............................................11

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323
    (S.D.N.Y. 2002) ....................................................................................................17, 20

*Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638 (E.D. Pa. 2001) ....................15, 19

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .......................4, 5

*Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368
    (3d Cir. 1991) .......................................................................................................10, 11

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    M.D.L. Docket No. 1014, C.A. No. 93-7074,
    1995 U.S. Dist. LEXIS 22042 (E.D. Pa. Feb. 22, 1995) ............................................18

*Payne v. Travenol Labs.*, 673 F.2d 798 (5ᵗʰ Cir. 1982).......................................................11

*Pryor v. NCAA*, 288 F.3d 548 (3d Cir. 2002) .......................................................................3

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir.),
    *cert. denied*, 516 U.S. 867 (1995)..........................................................................15, 17

*Rink v. Cheminova, Inc.*, 203 F.R.D. 648 (M.D. Fla. 2001) ........................................17, 18

*Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228 (11th Cir. 2000),
    *cert. denied*, 532 U.S. 919 (2001)...........................................................................3, 20

*School Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987) ............................................11

*Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279 (D.N.J. 1997) .....................................18

*Strathie v. Department of Transp.*, 716 F.2d 227 (3d Cir. 1983)..................................10, 11

*Texas v. Lesage*, 528 U.S. 18 (1999) ..........................................................................5, 6, 9

*In re Three Mile Island Litig.*, 87 F.R.D. 433 (M.D. Pa. 1980) ........................................21

*United States v. Athlone Indus., Inc.*, 746 F.2d 977 (3d Cir. 1984)..............................22, 23

*Wagner ex rel. Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002
    (3d Cir. 1995) ..........................................................................................................10

## INTRODUCTION

Plaintiffs now admit that their attempt to certify racial and disability classes was woefully defective. They concede that they never would have been able to get Rule 23(b)(2) classes certified. They even admit that they cannot certify a class action under Rule 23(b)(3). That would suggest the end of the inquiry.

But, in a last ditch effort, plaintiffs (again) seek to recast their case and prop up an improper national, class wide lawsuit by arguing that this Court can try only one issue – liability – and leave individual damages determinations for a later day. This stratagem, however, fails because plaintiffs must prove purposeful discrimination (both racial and disability) as to each class member,[1] the NCAA's waiver procedure implicates individual treatment and therefore mandates individual analyses, and the NCAA may prove by a preponderance of evidence that – even if it intended to purposefully discriminate (it, of course, did not) – the student-athlete would not have qualified for freshman athletics for nondiscriminatory reasons.

In addition, plaintiffs' attempt to artificially carve their case into single class issues has been rejected by many federal courts for the constitutionally mandated reason that one jury cannot consider liability while another jury considers compensatory and punitive damages because liability and damages are inextricably intertwined in intentional discrimination cases. Plaintiffs' proposal would require an initial trial and subsequent re-trials of many of the same issues, which would violate the Seventh Amendment and render the vehicle of a class action inferior and unmanageable. Finally, plaintiffs' proposal to split their causes of action into

_____

1.     With regard to the disability claim, the reasonable accommodation inquiry, which plaintiffs seek to defer as to all class members, *see* Plaintiffs' Reply at p. 22 n.10, is an integral part of the liability phase. *See* Section II B. *infra.*

separate, but allegedly triable, elements is antithetical to the purpose of Rule 23(c)(4)(A). For these reasons, plaintiffs' latest reinvention should be rejected and their motion for class certification should be denied.

## ARGUMENT

### I. THE "INCREDIBLE, SHRINKING" CASE.

For over 6 years, certain plaintiffs (first the *Cureton* plaintiffs, now the *Pryor* ones) have argued that Proposition 16 discriminates against them. Hoping to find a theory to sustain their lawsuits, they have repeatedly reinvented their claims. Plaintiffs have done so again in their reply papers.

By way of quick review, the *Cureton* plaintiffs unsuccessfully argued Proposition 16 disparately impacted them. That effort failed because the law did not provide for such a private cause of action. Plaintiffs tried to resurrect their lawsuit by moving to amend and restating their legal claim as one for purposeful discrimination. That attempt also failed. As two new plaintiff representatives in this case, Mr. Spivey and Ms. Pryor initially sought certification of Rule 23(b)(2) and Rule 23(b)(3) classes of all non-*Cureton* affected African Americans and all affected disabled student-athletes. Even before briefing, they lost the Rule 23(b)(2) argument in connection with the disability claim.

In May 2003, plaintiffs officially moved for class certification. The NCAA opposed that motion. Now, through the vehicle of a Reply Brief, plaintiffs have amended their request for class certification by withdrawing the Rule 23(b)(2) request entirely, and by arguing only for partial Rule 23(b)(3) certification. In addition, it appears that the Rehabilitation Act claim, which was once asserted on behalf of all disabled student-athletes, is now being brought only on behalf of *dyslexic* student-athletes.

Plaintiffs' Reply Brief is tantamount to an admission that after reviewing the NCAA's opposition brief, they agree with the NCAA's arguments and their only hope to salvage a class action is to re-cast their case in the narrowest terms possible. But for the reasons described below, this effort does not fix the fundamental problems that are fatal to class certification.

## II.    PLAINTIFFS CANNOT SEEK CERTIFICATION OF LIABILITY CLASSES ONLY.

Plaintiffs suggest that they could certify the single issue of whether the NCAA purposefully discriminated against them. That notion operates from the false premise that the liability trial would be a basic inquiry into whether by enacting or enforcing Proposition 16, the NCAA intended to discriminate against all African Americans and/or dyslexics. Such a trial, however, could never be so simple because claims of intentional discrimination must be examined on an individualized basis.

### A.    The NCAA's Waiver Process Precludes Class Wide Liability Determinations.

As the NCAA pointed out in its opening brief, each plaintiff must demonstrate that the NCAA purposefully discriminated against him or her. For persons like Mr. Spivey, who applied for a waiver and was rejected, he must demonstrate that the waiver rejection was the result of purposeful discrimination. *See Pryor v. NCAA,* 288 F.3d 548, 562-63 (3d Cir. 2002); *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1235 (11th Cir. 2000), *cert. denied*, 532 U.S. 919 (2001). This requires an individual inquiry into the facts and circumstances of the waiver rejection. For persons like Ms. Pryor, who applied for and received a partial waiver (partial qualifier status), she must demonstrate that the NCAA purposefully discriminated against her by

granting her only partial qualifier status.[2]  Finally, for class members who did not qualify, and did not apply for waivers, they must be able to demonstrate that they were rejected because of their race (or dyslexia) and applying for a waiver would not have made a difference.[3]  Such individualistic discrimination determinations cannot be proven on a class wide basis.

**B.     The Racial Discrimination Classes Must Be Examined On A Case-By-Case Basis.**

Notably, the United States Supreme Court has held that a party does not have standing to assert a Fourteenth Amendment Due Process or Equal Protection (intentional racial discrimination) claim if the defendant can show that the same decision would have been made in the absence of discrimination.  In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), the plaintiff claimed that the defendant school board's refusal to renew his teaching contract violated his rights under the First and Fourteenth Amendments because the non-renewal decision was allegedly based upon critical statements he made to a radio station.  The Court, however, disagreed that a mere showing of a constitutional violation was sufficient for plaintiff to prevail.  Rather, the Court found that he had to demonstrate that the alleged violation caused him not to be re-hired, *i.e.*, that the school board lacked a legitimate reason for not re-hiring him. The Court reasoned:

> The constitutional principle at stake is sufficiently vindicated if
> such an employee is placed in no worse a position than if he had

---

2.     Plaintiffs try to make an issue out of the fact that some NCAA research data suggest that partial qualifiers performed as well or better academically as freshman than certain groups of full qualifiers.  *See* Reply Br. at 7 n.3.  Of course, such data could only be relevant, if at all, to those who are granted partial qualifier status by operation of the NCAA's sliding scale – not to those, like Ms. Pryor, who obtained partial qualifier status through the waiver process.

3.     Perhaps more importantly, it is doubtful that those individuals who never applied for a waiver have standing to assert claims here because they did not exhaust the administrative channels for a remedy.

not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

> \*   \*   \*

> In other areas of constitutional law, this Court has found it necessary to formulate a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused. We think those are instructive in formulating the test to be applied here.

*Id.* at 285-86. The Court went on to conclude that while the plaintiff had the initial burden of showing that his constitutionally protected acts were a substantial factor in the Board's failure to re-hire him, the burden then shifted to the Board to show "by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] re-employment even in the absence of the protected conduct." *Id.* at 287.

The Court expanded upon its *Mt. Healthy* holding in *Texas v. Lesage*, 528 U.S. 18 (1999). In that case, Lesage, an African immigrant of Caucasian descent, applied for admission to a Ph.D. program and was rejected. He claimed that because the school considered the race of its applicants as part of its decision-making, and one of the twenty selected students was a racial minority, he was the victim of discrimination. "He alleged that, by establishing and maintaining a race-conscious admissions process, the school had violated the Equal Protection Clause of the Fourteenth Amendment and . . . 42 U.S.C. § 1981, . . . as amended, 42 U.S.C. § 1983 (1994 ed., Supp. III), and . . . 42 U.S.C. § 2000d." *Id.* at 19. Lesage sought money damages and injunctive relief.

The school moved for summary judgment arguing that because of Lesage's comparatively mediocre academic achievements and his weak application, race had no part in the ultimate decision on his application. The District Court granted summary judgment, but the Fifth Circuit reversed. The Supreme Court then held:

> Insofar as the Court of Appeals held that summary judgment was inappropriate on Lesage's § 1983 action seeking damages for the school's rejection of his application for the 1996-1997 academic year even if petitioners conclusively established that Lesage would have been rejected under a race-neutral policy, its decision is inconsistent with this Court's well-established framework for analyzing such claims. Under *Mt. Healthy*, even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration. Our previous decisions on this point have typically involved alleged retaliation for protected First Amendment activity rather than racial discrimination, but that distinction is immaterial. The underlying principle is the same: The government *can avoid liability* by proving that it would have made the same decision without the impermissible motive.
>
> Simply put, where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983.

*Id.* at 20-21 (emphasis added) (citations omitted).

The Court noted one exception: where plaintiffs are challenging a race-conscious program and seek forward-looking relief, they need not establish that they would have received the benefit in question if race were not considered. "But where there is no allegation of an ongoing . . . constitutional violation to support a claim for forward-looking relief, the government's conclusive demonstration that it would have made the same decision absent the alleged discrimination precludes any finding of liability." *Id.* at 21. The Court recognized that because it appeared Lesage had abandoned his claim that the school was presently administering

a discriminatory admissions policy, defendant's summary judgment argument was valid.  Thus, the Court reinstated summary judgment in favor of defendant on the Section 1983 claim, and remanded the Section 1981 and Title VI claims to the District Court to consider whether plaintiff had abandoned his claim for injunctive relief.  By remanding, the Court signaled that the *Mt. Healthy* defense applied to Section 1981 and Title VI claims, a conclusion which has been affirmed by a number of other federal courts construing *Lesage*. *E.g., Boston's Children First v. Boston Sch. Comm.*, 183 F. Supp. 2d 382, 393 (D. Mass. 2002) (applying *Lesage* rationale in Title VI case); *Johnson v. Board of Regents*, 106 F. Supp. 2d 1362, 1376 (S.D. Ga. 2000) (applying *Mt. Healthy* and *Lesage* rule in a case alleging discrimination under Titles VI and IX), *aff'd*, 263 F.3d 1234 (11th Cir. 2001); *see also Cotter v. City of Boston*, 323 F.3d 160, 167 (1st Cir.) (following *Lesage* on Section 1983 claim grounded on racial discrimination and citing other cases), *cert. denied*, 124 S. Ct. 179 (2003).  That makes perfect sense because Title VI and Section 1981 proscribe only those racial classifications that violate the Fourteenth Amendment. *E.g., Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001); *Comfort v. Lynn Sch. Comm.*, 263 F. Supp. 2d 209, 272-73 (D. Mass. 2003).

      In the instant case, plaintiffs no longer have claims for forward-looking declaratory/injunctive relief because the NCAA has replaced Proposition 16 with a new freshman Initial Eligibility Rule, which is not at issue.[4]  Consequently, with respect to each and

---

4.    Plaintiffs still argue, however, that notwithstanding their inability to represent Rule 23(b)(2) discrimination classes, they still have the ability to seek further eligibility because under the NCAA's Five Year Rule their hypothetical eligibility is not extinguished until the end of the Spring 2004 semester.  Reply Br. at 11-13.  But that argument ignores the sworn testimony of both plaintiffs that they have no realistic intention of enrolling in any school until Fall 2004 at the earliest.  And neither football (Mr. Spivey's sport) nor women's soccer (Ms. Pryor's sport) have intercollegiate competition in the Spring.  Certainly, it would serve no purpose for this Court to order the NCAA to allow these plaintiffs to compete in a sport at a time when there is no competition.  (And despite Mr. Spivey's curious argument that he should be able to get back

(continued…)

every class member's claim that the NCAA has purposefully discriminated against him or her, the NCAA has the right to prove with respect to each individual that they were denied full qualifier status for some other non-discriminatory reason, such as, by way of example, poor prior academic performance. As the Supreme Court makes clear in *Mt. Healthy* and *Lesage*, evidence on this point goes to the heart of a plaintiff's *liability* case against the defendant.

Moreover, as to many members of the proposed classes, there will be a detailed individualized record for those student-athletes who unsuccessfully sought a waiver, which will bear heavily upon the NCAA's justification for denying qualifier status to the student-athlete. Those records cannot simply be shoved to the side (as plaintiffs implicitly suggest) in their scramble to claim that the liability inquiry is so simple that it can be tried on a class basis.

Finally, the *Mt. Healthy* and *Lesage* line of cases deals a further blow to Mr. Spivey's claims. He lacks standing because, even in the absence of Proposition 16, he would not

---

(..continued)
his "fourth year" of eligibility (Reply Br. at 11), he testified during his deposition that he has not yet even used his second or third year of eligibility).

In the same portion of their Reply Brief, plaintiffs also point out that the NCAA has waived the requirements of the Five Year Rule in the past. That fact actually supports the NCAA's argument that persons like Mr. Spivey and Ms. Pryor, who did not seek such a waiver, have failed to exhaust remedies available to them. Moreover, such a point only bolsters the NCAA's argument that the liability (and damages) inquiry for each plaintiff is highly individualistic.

Finally, the NCAA's Five Year Rule is hardly "self-serving" as plaintiffs suggest on page 14 of their Reply Brief. Rather, it provides an opportunity for non-qualifiers and partial qualifiers to obtain a fourth year of eligibility. The rule can hardly be called "self-serving" merely because it does not favor these particular plaintiffs and their particular factual circumstances.

have qualified for freshman athletics under the NCAA's predecessor Initial Eligibility Rule.[5] In reply, Mr. Spivey sets up a strawman of an argument that he then knocks down. He argues that the NCAA is picking on just one aspect of Proposition 16 and is ignoring his claim that the rule as applied in its entirety is discriminatory. Although that argument has nothing whatsoever to do with the NCAA's standing argument, *Mt. Healthy* and *Lesage* add further support to the NCAA's claim that Mr. Spivey was not victimized by the application of Proposition 16 because, even if the NCAA promulgated that rule intentionally to discriminate against him, the *uncontradicted* evidence is that, because of Mr. Spivey's sub-2.0 GPA, he never would have qualified if Proposition 16 had never been adopted. *Cotter*, 323 F.3d at 166 (citing *Lesage* and stating, "[i]t is uncontested that had the Department not used race-conscious criteria, it would have only promoted candidates with a score of eighty-five or higher. Because appellants only scored eighty-four, they cannot show standing for damages."). Thus, standing and causation are lacking, and Mr. Spivey cannot be considered an appropriate class representative.

## C. The Liability Phase Of The Rehabilitation Act Claim Includes A Case-By-Case Reasonable Accommodation Inquiry.

The fact intensive and case specific Rehabilitation Act claim also precludes class wide liability certification. Remarkably, Ms. Pryor argues in Footnote 10 of plaintiffs' Reply Brief, that the reasonable accommodation analysis can be made *after* a liability determination. But, the reasonable accommodation inquiry is part of her case in chief. Indeed, each class member would have to demonstrate that the NCAA failed to offer him/her a reasonable accommodation in order to prove his/her *liability* case against the NCAA. *See* NCAA Opp. Br.

---

5.    In their Reply Brief, plaintiffs have discarded the argument asserted in their Complaint and Amended Complaint that Proposition 16's immediate predecessor – Proposition 48 – was discriminatory. *Compare* Reply Br. at 12 *with* Am. Compl. at ¶¶ 60-63.

at 31-32; *Wagner ex rel. Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995)

("In order to establish *a violation* of the Rehabilitation Act, a plaintiff must prove . . . that he is

'otherwise qualified' for the position sought . . . .[and] in looking at whether an individual is

otherwise qualified, *we must analyze whether the person would be otherwise qualified if*

*reasonable accommodations are made for his/her handicap.*") (emphasis added);[6] *Easley ex rel.*

*Easley v. Snider*, 36 F.3d 297, 302 (3d Cir. 1994) ("[W]hen determining whether a program

discriminates, a court must determine two things: (1) whether the plaintiff meets the program's

stated requirements in spite of his/her handicap, and (2) whether a reasonable accommodation

could allow the handicapped person to receive the program's essential benefits."). *See also*

*Alexander v. Choate*, 469 U.S. 287, 300 (1985) ("[*Southeastern Community College v. Davis*,

442 U.S. 397 (1979) . . . struck a balance between the statutory rights of the handicapped to be

integrated into society and the legitimate interests of federal grantees in preserving the integrity

of their programs: while a grantee need not be required to make 'fundamental' or 'substantial'

modifications to accommodate the handicapped, it may be required to make 'reasonable' ones.");

*Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384 (3d Cir. 1991) ("[T]he

'reasonable accommodation' standard . . . was designed to clarify whether an individual was

'otherwise qualified' for a program."); *Brennan v. Stewart*, 834 F.2d 1248, 1262 (5th Cir. 1988)

("The question after *Alexander* is the rather mushy one of whether some 'reasonable

accommodation' is available to satisfy the legitimate interests of both the grantee and the

handicapped person."); *Strathie v. Department of Transp.*, 716 F.2d 227, 231 (3d Cir. 1983) ("A

---

6.      The *Wagner* Court further elaborated that "[t]he inquiry into whether an applicant is otherwise qualified necessarily involves a determination of whether the applicant could have gained access to the program if the recipient of funds had made reasonable accommodations." 49 F.3d at 1014.

handicapped individual who cannot meet all of a program's requirements is not otherwise

qualified if there is a factual basis in the record reasonably demonstrating that accommodating

that individual would require either a modification of the essential nature of the program, or

impose an undue burden on the recipient of the federal funds."). As the NCAA explained in its

opening brief on pages 31-32, liability in disability discrimination cases must be assessed

individual-by-individual, especially in this case where the NCAA has a specific appeal process.[7]

Plaintiffs do not claim that the reasonable accommodation question can be determined on a class

wide basis; they instead appear to suggest (improperly) that such inquiry is part of each class

member's damage claim. Reply Br. at 22 n.10. That is plainly wrong, and for this additional,

critical reason, a liability only class may not be certified for the putative Rehabilitation Act

claims.[8]

---

[7]. The Supreme Court aptly recognized in *School Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987), that in order to answer the question of whether a person is "otherwise qualified" under the Rehabilitation Act, "the district court will need to conduct an individualized inquiry and make appropriate findings of fact." *Id.* at 287; *accord Nathanson*, 926 F.2d at 1385 ("What is considered to be a 'reasonable accommodation' of course must be decided on a case-by-case basis"). *Cf. McDonald v. Prudential Ins. Co. of Am.*, No. 95 C 5186, 1999 U.S. Dist. LEXIS 1974, at *13 (N.D. Ill. Feb. 19, 1999) (denying Rule 23(b)(3) certification because court would have to determine medical necessity of each claim).

[8]. Plaintiffs belittle as "malarkey" the NCAA's objection regarding Ms. Pryor's adequacy as a representative of both African-Americans and learning disabled student-athletes (or is it dyslexic student-athletes?). Federal courts, however, have indeed held that dual representations pose serious problems related to adequacy. *See, e.g., Payne v. Travenol Labs.,* 673 F.2d 798, 810-812 (5th Cir. 1982) (district court properly held that African American females could not represent African American males in their class suit alleging sex and racial discrimination); *Harrison v. Simon,* 91 F.R.D. 423, 430 (E.D. Pa. 1981) ("We find therefore, pursuant to Rule 23(a)(4), that Mr. Harrison could only represent a class of black employees and Ms. Friedman could only represent a class of female employees but neither plaintiff could represent both black and female employees."); *Hammons v. Folger Coffee Co.*, 87 F.R.D. 600, 601 (W.D. Mo. 1980) (holding that plaintiff could not be class representative for both African-Americans and females because of conflict of interests between the two groups); *Colston v. Maryland Cup Corp.,* No. B-76-235, 1978 U.S. Dist. LEXIS 15383, at *8 (D. Md. Sept. 21, 1978) ("Were plaintiff to be permitted to represent both all black and female employees she would be placed in a position of

(continued…)

Accordingly, because plaintiffs cannot satisfy the theory that they posit – that the liability of each putative discrimination class could be established with class proof – their motion for class certification should be denied. But, even if liability could be determined on a class wide basis, there would be insurmountable logistical problems with any bifurcation of the liability and damages phases of this litigation.

## III.   PLAINTIFFS CANNOT CURE THEIR PREDOMINANCE AND SUPERIORITY PROBLEMS BY INVOKING RULE 23(c)(4)(A).

A number of federal courts, including some cited by the NCAA in its opening brief, have held that a liability only class cannot be certified using Rule 23(c)(4)(A) when using Rule 23(b)(2) or Rule 23(b)(3) alone would not entitle plaintiffs to relief. For two primary reasons this Court should hold that a liability issue only class cannot be certified in these discrimination cases.

First, many of the courts properly reason that damages determinations that require a specific showing of actual harm (for compensatory damages) and certain conduct (for punitive damages) cannot be made without weighing the factual evidence that formed the basis of liability. Thus, potential subsequent damages juries would have to hear and weigh liability evidence presented in the "class" trial in connection with each individual claim, which would violate the Seventh Amendment's requirement that factual issues be decided by a single jury. Moreover, a mere announcement to subsequent "damages" juries that there was a liability

---

(..continued)

inherent conflict.") Here, it is inherently contradictory for Ms. Pryor to say in one breath that the Proposition 16 standards were set purposefully to discriminate against African Americans, but in another breath to say the NCAA set the standards purposefully to discriminate against learning disabled (or dyslexic) student-athletes. Ms. Pryor's attempt to represent both classes makes her an inadequate representative of either one.

judgment entered by a first jury without presentation of all of the liability evidence from the first trial would also run afoul of the Seventh Amendment. Such a procedure would permit the subsequent juries to assess compensatory and punitive damages without having a full understanding of the facts giving rise to liability.

Second, a liability only class is not superior or manageable when many, if not most, of the same evidence would have to be re-presented in the damages trial. Any perceived benefit of a liability phase would therefore be lost.

**A. Plaintiffs' Proposed Liability Only Class Trial Would Violate The NCAA's Seventh Amendment Rights.**

Plaintiffs' proposed bifurcation violates the Seventh Amendment because multiple juries would be required to reconsider matters tried by the first – liability only – jury. "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996). As the Fifth Circuit explained in *Castano*:

> [S]eparation of issues is not the usual course that should be followed, and . . . the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice. This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact. . . . Such a rule is dictated for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent.

*Id.* at 750-51 (*quoting Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)). Likewise, in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the Court recognized that severing liability from damages in a Section 1981 jury case would run afoul of the Seventh Amendment. That Court reasoned:

> Once the right to a jury trial attaches to a claim, however, it
> extends to all factual issues necessary to resolving that claim.
> Thus, under section 1981a, the right to a jury trial extends to all
> factual issues necessary to determine liability on the plaintiffs'
> pattern or practice claim and the recovery of compensatory and
> punitive damages. . . . Thus, the jury demand in this case extends
> to all issues that materially relate to liability on the pattern or
> practice claims and the recovery of compensatory or punitive
> damages . . .

*Id.* at 423 (citations omitted).

As explained above, there can be no determination of "liability" or "causation" that does not involve individual proofs. For example, evaluation of each student-athlete's waiver application (or his or her decision not to seek one) would have to be considered. Moreover, proof of the circumstances surrounding a waiver application would be relevant and presented at a liability phase, but also would have to be re-presented and considered by a jury in a damages phase because that jury would theoretically be trying to measure (1) whether mental distress was caused in whole or in part by the NCAA's actions,[9] (2) what amount of the student-athlete's mental distress was caused by the NCAA's actions,[10] and (3) how egregious the NCAA's actions

---

9.      *Cf. Barnes v. American Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998) ("[P]laintiffs cannot prove causation by merely showing that smoking cigarettes causes cancer and other diseases. They must demonstrate that defendants' intentional or negligent nicotine manipulation caused each individual plaintiff to have a significantly increased risk of contracting serious latent diseases thereby demonstrating the need for medical monitoring.").

10.      As noted by one district court in a recent Section 1983 case:

> [P]roof of causation for damages attributable to emotional injury
> under § 1983 may implicate subjective differences between each
> individual plaintiff. In setting damages, for example, the trier of
> fact must wrestle with the task of separating the injury fairly
> attributable to the defendants' misconduct from any other
> individualized sources of emotional distress.

*Augustin v. Jablonsky*, No. 99-CV-3126, 2001 U.S. Dist. LEXIS 10276, at *28 (E.D.N.Y. Mar. 8, 2001).

were such that punitive damages should be assessed.  *See BMW of N. Am. v. Gore*, 517 U.S. 559

(1996) (punitive damage award must be reasonably related to the reprehensibility of the

defendant's conduct and the amount of the compensatory damages award).  In essence, the class

jury would have to consider the NCAA's alleged bad conduct, but a 2nd, 3rd, and "nth" jury

would have to re-examine such conduct to determine what impact it had on each individual

plaintiff.  *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir.), *cert. denied*, 516 U.S.

867 (1995). The reconsideration by the second and nth juries of the issues and findings of the

first jury would violate the Seventh Amendment.  *Id.* ("[T]he judge must not divide issues

between separate trials in such a way that the same issue is reexamined by different juries").  *See*

*Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 644 (E.D. Pa. 2001) ("I find that it would

be highly impractical to have one jury weigh all the evidence within the liability phase and then

apply that presumption, if so found, to each of the potential 200 class members.").[11]

**B.      Rule 23(c)(4)(A) Cannot Be Used To Conjure Up A Class Where The Causes Of Action, If Tried As A Whole, Would Not Satisfy Predominance And/Or Superiority.**

The Fifth Circuit's decision in *Allison*, which the NCAA highlighted in its

opening brief and appears nowhere in plaintiffs' Reply Brief, further illustrates these points.  The

*Allison* Court held that the trial court properly declined to certify a hybrid Rule 23(b)(2) and

(b)(3) class because the compensatory and punitive damages sought by plaintiffs, alleged victims

---

11.      *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), cited by plaintiffs, does not
support their bifurcation suggestion.  The underlying claims in *Bogosian* were based on antitrust
violations – violations from which the fact of damage can be presumed.  *Id.*  With that
understanding, the *Bogosian* Court ruled that the necessity for the *calculation* of damages on an
individual basis should not preclude class certification *where the fact of damage could be proven
class wide.  Id.* at 455-56.  Here damages are not presumed.  Each class member would have to
show in individual mini-trials that he was injured by the NCAA's failure to accord him full
qualifier status as a freshman.

of employment racial discrimination, gave rise to individual issues which defeated the

predominance and superiority prongs of Rule 23(b)(3).  Like the plaintiffs here, the *Allison*

plaintiffs proposed narrowing the class issues to those of liability only in an attempt to overcome

the Rule 23(b)(3) predominance and superiority hurdles.  The Court rejected that effort and

explained:

> First, we fail to see how certifying the first stage of the pattern or
> practice claim significantly increases the likelihood that later
> certification of the second stage of the pattern or practice claim,
> including the claims for compensatory and punitive damages,
> would be possible.  The second stage of a pattern or practice claim
> is essentially a series of individual lawsuits, except that there is a
> shift of the burden of proof in the plaintiff's favor.  As the [United
> States] Supreme Court has made clear, there are no common issues
> between the first stage of a pattern or practice claim and an
> individual discrimination suit.  *As a result, we see no legal basis
> for the district court to certify a class action on the first stage of
> the plaintiffs' pattern or practice claim when there is no
> foreseeable likelihood that the claims for compensatory and
> punitive damages could be certified in the class action sought by
> the plaintiffs.*

> \*       \*       \*

> Second, certifying the first stage of the pattern or practice claim
> under (b)(3) is foreclosed by *Castano [v. American Tobacco Co.*,
> 84 F.3d 734 (5th Cir. 1996)].  We have already held that, when
> considered as a whole, the plaintiffs' pattern or practice claim in
> this case implicates predominantly individual-specific issues.  We
> based this holding on the wide array of individual issues attendant
> to the compensatory and punitive damages claims.  Thus, under the
> plaintiffs' theory, certification of the first stage of the pattern or
> practice claim would be appropriate presumably because
> individual-specific issues would be "severed" – but only
> temporarily – under Rule 23(c)(4), making issues common to the
> class predominant (at least theoretically) for the purposes of
> meeting the (b)(3) requirements.  But such an attempt to
> "manufacture predominance through the nimble use of subdivision
> (c)(4)" is precisely what *Castano* forbade.  *See* 84 F.3d at 745 n.21.
> As the court explained, "*reading rule 23(c)(4) as allowing a court
> to sever issues until the remaining common issue predominates
> over the remaining individual issues would eviscerate the
> predominance requirement of rule 23(b)(3); the result would be*

> *automatic certification in every case where there is a common issue, a result that could not have been intended.*" *Id.*

151 F.3d at 421-22 (emphasis added; citations and footnote omitted).

Other federal courts have routinely rejected precisely the tactic that plaintiffs seek to employ here, which is to convert an uncertifiable Rule 23(b)(3) case into a purportedly certifiable single issue. The *Castano* court, as well as courts of this circuit, have recognized that the scope of Rule 23(c)(4)(A) does not allow for such gamesmanship. "The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano*, 84 F.3d at 745 n.21; *see also Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) (holding that separation of liability and damages in a class action was improper because successive juries were asked to try the same issue); *In re Rhone-Poulenc*, 51 F.3d at 1297 (judge's certification of negligence suit "'as a class action with respect to particular issues' only" under Rule 23(c)(4)(A) "exceeds the permissible bounds of discretion in the management of federal litigation as to compel us to intervene and order decertification"); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 170 (S.D.N.Y. 2003) ("The fact that such a voluminous number of individual trials would be required after the class-wide trial, or possibly a second class trial, all of which would necessarily include adjudication of significant issues specific to each individual class member, retards the ability of the initial class-wide trial to materially further the litigation."); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002) ("[I]ssue certification is 'not appropriate if, despite the presence of a common issue, certification would not make the case more manageable . . . .'") (citation omitted); *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652 (M.D. Fla. 2001) ("[E]ven if this Court were to accept the Plaintiffs' invitation to certify a class action limited only to the so-

called common issue of whether the Defendants delivered a defective product . . . any subsequent mini-trial involving . . . injury and damage to a particular Plaintiff would necessarily have to involve all of the facts and circumstances surrounding the delivery of the product . . ..”); *Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D. 209, 219 (D. Conn. 1999) (“[A]ny attempt to make the case manageable by bifurcating issues – adjudicating the common issues first in a class trial, and then the individual issues in separate trials, as the Cohns suggest – would run the risk of causing a second jury to reconsider matters previously tried by the first jury”); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 225 (W.D. Mich. 1998) (“[I]t is clear that certification of the question of Jackson National's common course of misconduct is inappropriate, for the cause of action as a whole certainly does not satisfy the predominance requirement of Rule 23(b)(3).”); *Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279, 290 n.4 (D.N.J. 1997) (“Recently, courts have been cautioned against the class certification of common issues within a single claim by splitting the elements of a claim into class and individual components.”); *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 496 (E.D. Pa. 1997) (“Plaintiffs cannot read the predominance requirement out of (b)(3) by using (c)(4) to sever issues until the common issues predominate over the individual issues.”); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, M.D.L. Docket No. 1014, C.A. No. 93-7074, 1995 U.S. Dist. LEXIS 22042, at *35 (E.D. Pa. Feb. 22, 1995) (rejecting issue certification under Rule 23(c)(4)(A) and noting “[w]hile there are a few common issues (i.e. whether defendants' products are defective), the individual issues of causation and damage so overshadow those common issues to render a class action unmanageable”).  As Judge Newcomer succinctly held, “[b]efore a district court may certify common issues pursuant to (c)(4), the court must first find that *a cause of action, as whole, satisfies the predominance requirement of (b)(3).*” *Arch*, 175 F.R.D. at 496 (emphasis added). Consequently, federal courts have rejected attempts to sever specific issues for certification

where the claim taken as a whole runs afoul of the Rule 23(b)(3) predominance and/or superiority requirements.

Nowhere in plaintiffs' Reply Brief do they challenge the NCAA's argument that their claims, taken together as whole, cannot be certified as a class because they fail the predominance and superiority tests. Instead, plaintiffs try to blur the line between the predominance and commonality inquiry by listing issues in their Reply Brief which they believe are susceptible to common proof. Reply Br. at 22-24. Putting aside that many of those allegedly common issues would only be relevant to a disparate impact inquiry (which was rejected in *Cureton*),[12] the predominance test is much more exacting than showing commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). "Specifically, 'predominance measures whether the class is sufficiently cohesive to warrant certification.'" *Huegel v. City of Easton*, No. 00-CV-5077, 2002 U.S. Dist. LEXIS 22273, at *16 (E.D. Pa. Oct. 22, 2002) (citation omitted). It is hard to imagine classes that are less cohesive than here where plaintiffs now want to splinter their causes of action and try damages individually. That is precisely why the *Huegel* Court and the Third Circuit in *Barabin v. Aramark Corp.*, No. 02-8057, 2003 U.S. App. LEXIS 3532, at *7-8 (3d Cir. Jan. 24, 2003) held that because of the individualized claims for damages and the defenses they triggered, the individual issues swamped the common ones. *Accord Miller*, 198 F.R.D. at 643-44; *Adams v. Henderson*, 197 F.R.D. 162, 172 (D. Md. 2000) (where computation of damages would require separate mini trials, individualized damages determination predominated over common issues).

---

12. In fact, it is plaintiffs' futile insistence (by necessity) of pursuing intentional discrimination claims that compels a denial of class certification. Such claims, if successful, would entitle plaintiffs to complex damages determinations, including enhanced damages, that are inextricably intertwined with any adverse liability determinations.

The same is true here. Through nimble re-casting, plaintiffs cannot transform an uncertifiable case into a certifiable one. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. at 351 ("Plaintiffs have the burden of showing that issue certification will 'materially advance a disposition of the litigation as a whole.'") (citation omitted). Or, as the Eleventh Circuit Court of Appeals has recognized, "[o]nce one understands that the issues involved in the instant case are predominantly case-specific in nature, it becomes clear that there is nothing to be gained by certifying this case as a class action; nothing, that is, except the blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement." *Rutstein*, 211 F.3d at 1240-41 n.21.[13]

### C. Plaintiffs' Suggested Rule 23(c)(4)(A) Panacea Does Not Affect Their Inability To Demonstrate Superiority.

Even if plaintiffs could somehow so compartmentalize the liability issues such that they predominated over other class issues (which as described above runs counter to Rule 23(c)(4)(A)), the class action vehicle would remain far inferior to individual suits.

---

13.     Likewise, the *Allison* Court noted:

> [P]laintiffs' attempts at piecemeal certification of a class action . . . distorts the certification process and ultimately results in unfairness to all because of the increased uncertainties in what is at stake in the litigation and in whether the litigation will ever resolve any significant part of the dispute. The plaintiffs have emphasized that class certification will "facilitate" settlement.
>
> We are not sure of such a result. In any event, we should not condone a certification-at-all-costs approach to this case for the simple purpose of forcing a settlement. Settlements should reflect the relative merits of the parties' claims, not a surrender to the vagaries of an utterly unpredictable and burdensome litigation procedure.

151 F.3d at 422 n.17.

The most compelling rationale for class action treatment is where "the costs of enforcement in an individual action would exceed the expected individual recovery" (*In re Inter-Op Hip Prothesis Liab. Litig.*, 204 F.R.D. 359, 377 (N.D. Ohio 2001)), such that the lawsuit would likely never be brought on an individual basis. This is what courts and commentators refer to as a "negative value lawsuit." *Castano*, 84 F.3d at 748; *In re Inter-Op Hip*, 204 F.R.D. at 377. But whereas here plaintiffs seek significant mental distress and other compensatory damages, punitive damages, as well as costs of bringing the suit under the applicable statutory provisions, many federal courts have recognized that superiority is lacking. *E.g.*, *Amchem Prods.*, 521 U.S. at 617 ("[T]he Advisory Committee had dominantly in mind vindication of the 'rights of groups of people who individually would be without effective strength to bring their opponents into court at all'") (citation omitted); *Allison*, 151 F.3d at 420 ("The relatively substantial value of these claims . . . and the availability of attorneys' fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible."); *Augustin*, 2001 U.S. Dist. LEXIS 10276, at *45 (holding in case where plaintiffs sought compensatory damages for mental distress and punitive damages, "this case . . . does not appear to be one in which the potential for recovery is so modest or dwarfed by litigation costs that injured plaintiffs could not bring suit individually"). *See also Barnes*, 259 F.3d at 192 ("We hold that establishing proof of the plaintiffs' injuries and litigating the defenses available to the defendants would present insurmountable manageability problems."); *In re Three Mile Island Litig.*, 87 F.R.D. 433, 441-42 (M.D. Pa. 1980) (holding that class action was not superior way of adjudicating claims of persons claiming emotional distress from exposure to radiation).

Moreover, plaintiffs' suggestion that, absent liability issue only certification, "the only alternative . . . is for hundreds of student-athletes to bring individual challenges to Proposition 16 that require an adjudication on liability using the same evidence" (Reply Br. at

25), is speculative, not borne out by history, and has been rejected as a rationale for resorting to Rule 23(c)(A)(4).  *E.g.*, *Castano*, 84 F.3d at 748 ("Until plaintiffs decide to file individual claims, a court cannot, from the existence of injury, presume that all or even any plaintiffs will pursue legal remedies.  Nor can a court make a superiority determination based on such speculation.") (citation and footnote omitted).  Thus, plaintiffs have not cured their superiority problem through their attempted artful pleading/reply.

## IV.  PLAINTIFFS CANNOT RE-WRITE *CURETON* TO AVOID THE IMPOSITION OF *RES JUDICATA* AND COLLATERAL ESTOPPEL HERE.

Plaintiffs make three arguments in their Reply Brief to avoid the imposition of *res judicata* and collateral estoppel from rulings made in the *Cureton* case.  None of those arguments are availing.

In reverse order, plaintiffs argue that because the *Cureton* plaintiffs did not seek to claim money damages when they tried to amend their complaint and add a purposeful discrimination claim, they cannot be barred from seeking that *relief* here.  *Res judicata* and collateral estoppel, however, are relief blind.  They bar already litigated *claims* – not already litigated claims for the same relief.  *Kilgoar v. Colbert County Bd. of Educ.*, 578 F.2d 1033, 1035 (5th Cir. 1978) ("Consistent with the broad purpose of *res judicata* to eliminate needless repetitive litigation, the modern view regards the same cause of action to refer to all grounds for relief arising out of the conduct complained of in the original action.") (cited in Reply Br. at 28).  *See also Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (holding that mere reliance on a new theory of recovery will not prevent preclusion of new claims where there is an essential similarity among the underlying events giving rise to the various legal claims); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (concluding that two allegedly separate causes of action are, in fact, the same where there is "an essential similarity of the

underlying events giving rise to the various legal claims."). Accordingly, the character of the relief sought by the *Cureton* plaintiffs when they tried to amend does not affect whether the cause of action that they sought to assert at that time is now barred.

Second, plaintiffs' argument that *res judicata* does not apply to post-final judgment discrimination misses the point. The cases that plaintiffs rely upon stand for the unremarkable proposition that if there is some new act of discrimination that postdates the final judgment, that new act gives rise to a cause of action that is not barred (because it was impossible to know at the time of the earlier suit that such an act would ever occur). *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992) ("Because Manning had no claim when [the earlier case] was filed and is not barred from bringing claims that arose after her dismissal from [that case] her complaint could not be dismissed [on *res judicata* grounds] in its entirety"); *Kilgoar*, 578 F.2d at 1035 ("The plaintiffs' present action, to the extent it is based on conduct subsequent to the second suit, is not barred by the prior litigation."). But in *Cureton*, plaintiffs sought to represent those already victimized *and those who would allegedly in the future be victimized* by the operation of Proposition 16. Thus, the claim never changed; the *Cureton* plaintiffs expanded the class and adopted a class definition that was as broad as possible (because at that moment in time plaintiffs had a liability judgment in their favor). As a result, all of those persons are bound by the rulings of the *Cureton* Courts.

Mr. Spivey's and Ms. Pryor's sub-argument that they do not know what the word "future" in *Cureton* means is comical. It merely highlights the barrenness of their contentions.

Finally, plaintiffs argue that the rejection by this Court and the Third Circuit of the *Cureton* plaintiffs' motion to amend was not a final judgment on the merits because the merits of that cause of action were not litigated. In so doing, plaintiffs (1) fail to cite any case law which defines the meaning of a final judgment on the merits, and (2) fail to address the cases

cited by the NCAA on page 48 of its opening brief which apply *res judicata* and/or collateral estoppel in identical factual circumstances – where Case # 1 denies plaintiffs' motion to amend the complaint and add a certain claim and where plaintiffs seek to bring that claim anew in Case # 2.

For all of these reasons, should the Court grant any portion of plaintiffs' motion for class certification (which it should not do), it should apply *res judicata* and collateral estoppel so as to bar all purposeful discrimination claims by *Cureton* class members here.

## <u>CONCLUSION</u>

For all of the foregoing reasons and those set forth in its opening brief, the National Collegiate Athletic Association respectfully requests that this Court deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

/s/ Michael W. McTigue Jr.
David P. Bruton
Michael W. McTigue Jr.
Theodore F. Haussman, Jr.
James J. Dougherty
**DRINKER BIDDLE & REATH LLP**
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Attorneys for Defendant
National Collegiate Athletic Association

Dated: December 3, 2003

## CERTIFICATE OF SERVICE

I, Theodore F. Haussman, Jr., hereby certify that on this 3rd day of December 2003, I caused a true and correct copy of the Defendant National Collegiate Athletic Association's Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification to be served upon the following, by the means indicated:

## BY HAND DELIVERY:

Andre L. Dennis, Esquire
Danielle Banks, Esquire
**STRADLEY, RONON, STEVENS**
**& YOUNG, LLP**
2600 One Commerce Square
Philadelphia, PA 19103-7098


/s/ Theodore F. Haussman, Jr.
Theodore F. Haussman, Jr.