**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLY N. PRYOR and WARREN E. SPIVEY, JR., Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | CIVIL ACTION<br><br>NO. 00-CV-3242 |

**PLAINTIFFS' RESPONSE TO**
**THE NCAA'S SUR-REPLY MEMORANDUM**
**ON CLASS CERTIFICATION**

## I. ARGUMENT

### A. Plaintiffs' Proposed Liability Classes Are Properly Certified Under Federal Rule Of Civil Procedure 23(c)(4)(A).

In 1966, the Federal Rules of Civil Procedure were amended to include Rule 23(c)(4)(A) to meet any potential difficulty with severances in class actions. *See generally* Fed. R. Civ. P. 23(c)(4)(A) advisory committee's notes (1966); *see also Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 29 (E.D.N.Y. 2001). Rule 23(c)(4)(A) accords district judges the discretion to certify a class action as to particular issues in a manner calculated to "treat common things in common and to distinguish the distinguishable." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968).

Rule 23(c)(4)(A) provides that an action may be brought or maintained as a class action with respect to particular issues. The underlying philosophy of that rule is that:

> The advantages and economics of adjudicating issues that are common to the entire class as a representative basis should be secured even though other issues in the case may have to be litigated separately by each member. Accordingly, even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify application of the provision as long as the other Rule 23 requirements have been met.

*Coca-Cola Bottling Co. of Elizabethtown, Inc.* v. *Coca-Cola Co.*, 98 F.R.D. 254, 267 (D. Del. 1983) (citing 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1790 at 189 (1986)). As to the other requirements of Rule 23:

> The admitted effect of this determination is to lessen – for Rule **23(c)(4)(A)** purposes – the importance of the predominance requirement, as such. That may be viewed, however, as offset by a corresponding increase in the importance accorded Rule 23(b)'s requirement of superiority, a requirement which is unaffected by Rule 23(c)(4)(A). In fact, in practical working terms I would view the predominance requirement, in connection with a Rule **23(c)(4)(A)** request, as subsumed to a considerable extent within that 'superiority' requirement.

*In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D. Mo. 1985)(emphasis added).

On the very issue of the effect of Rule 23(c)(4)(A) on the rest of Rule 23's requirements, the *In re Tetracycline Cases* court reasoned that

> If the requirement under Rule **23(c)(4)(A)** was not only that there be one or more issues which met the Rule 23(a) tests for commonality, typicality and adequacy of representation, but also that those issues 'predominate' in the usual Rule 23(b) sense, when compared with **all** the issues in the case, **there would obviously be no need or place for Rule 23(c)(4)(A)**. Reference to the general rules of construction suggests that any interpretation which makes a federal rule superfluous is to be avoided. . . . I believe, accordingly, that the appropriate meaning of Rule 23(b)'s predominance requirement, **as applied in the context of a partial class certification request under Rule 23(c)(4)(A), is simply that the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole. In applying this test the court must obviously consider the nature of the other potential issues in the litigation; but, to me at least, the ultimate**

> **analytical process followed in that regard is quite different than in the usual application of this part of Rule 23(b).**

*Id.* (emphasis added, citation omitted)(Mass tort putative class seeking compensatory and punitive damages; certification ultimately denied on superiority grounds).

Finally, according to Professors Wright and Miller:

> Even though a court decides that the common questions do not predominate for purposes of Rule 23(b)(3), the action should not be dismissed if it can proceed on an individual basis. In addition, the court always should consider the possibility of determining particular issues on a representative basis as permitted by Rule **23(c)(4)(A)** or reshaping the class pursuant to Rule 23(c)(4)(B) whenever that might prove efficient and economical. **The effect may be to make the common issues in the recast class action "predominate" for purposes of Rule 23(b)(3).**

7A Wright & Miller, *supra*, at 57 (1972)(emphasis added).

Contrary to the NCAA's assertion, in order to grant partial certification under Rule 23(c)(4)(A), Plaintiffs here need only show that the Rule 23(a) requirements and the Rule 23(b)(3) predominance requirement have been met with regard to the limited issues Plaintiffs seek to certify. Moreover, common issues may predominate under Rule 23(b)(3) **even if their resolution does not alone establish liability**. *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1985).

Here, Plaintiffs' sole request is certification of three liability classes – one as to the Title VI claim, one as to the § 1981 claim and one as to the Rehabilitation Act claim. With regard to these liability classes, Plaintiffs contend that the NCAA discriminates against them, and others similarly situated, because of race and because of disability with a single rule – the policy and/or practice embodied in Proposition 16. Through Proposition 16, the NCAA discriminates against Plaintiffs and the members of the putative liability classes in the same manner and at the same time. The evidence required to prove that Proposition 16 is

discriminatory in Plaintiffs' individual claims under Title VI, § 1981 and the Rehabilitation Act is identical to the evidence required by the putative classes to prove that Proposition 16 is discriminatory.

In particular, in the Title VI and § 1981 claims, Plaintiffs allege that Proposition 16 is directed particularly and specifically at African-American student-athletes – members of those putative liability classes have the same claims and they are proven with the same evidence. Through the Rehabilitation Act claim, Ms. Pryor seeks to prove that Proposition 16 discriminates against her as a student-athlete with dyslexia because dyslexic students cannot be properly measured by the SAT, yet the NCAA continues to use this yardstick to deny eligibility to otherwise qualified dyslexic student-athletes. The Rehabilitation Act liability class will likewise press the same claim – with the question of whether Proposition 16 intentionally screens out dyslexic student-athletes being identical. Rule 23(c)(4)(A) is an appropriate vehicle for partial certification of discrete issues such as these when, as here, common proof will be offered to prove up those discrete issues of liability.

**B. The Fact That Plaintiffs Press Claims For Intentional Discrimination Does Not Defeat Their Request for Certification of Liability Classes.**

Where common issues important to the litigation can be resolved on a classwide basis, class certification is appropriate even when those common issues are not case dispositive. *In re School Asbestos Litig.*, 789 F.2d at 1010. Nevertheless, the NCAA contends that Plaintiffs' request for certification under Rule 23(c)(4)(A) fails because there are individual determinations

that must be made to finally determine liability to each individual plaintiff in the class.[1] This contention misses the point of limited certification. That is, the issues related to whether Proposition 16 is discriminatory will be determined separate and apart from those individual questions related to whether the NCAA is actually liable to each plaintiff for damages. This fact makes severance of the Proposition 16 discrimination issue appropriate.

Proving that Proposition 16 is intentionally discriminatory under Title VI, § 1981 and the Rehabilitation Act is most analogous to proving a pattern or practice case under Title VII. That is so because as to Proposition 16, the NCAA's discriminatory conduct affects both Plaintiffs and members of the putative Classes in the same way – it denies them qualifier status through the application of a single intentionally discriminatory policy. To prevail on a pattern or practice disparate treatment claim, the plaintiffs must establish that intentional discrimination was the defendant's "standard operating procedure." *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). A disparate treatment class action is generally divided into two phases: liability and remedial. *Id.* at 360-362.

At the liability stage, the plaintiffs must produce sufficient evidence to establish a *prima facie* case of a policy, pattern, or practice of intentional discrimination against the protected group. *Id. at 360.* If the plaintiffs satisfy this *prima facie* requirement, the "burden [of production] then shifts to the employer to defeat [it] . . . by demonstrating that the [plaintiffs'] proof is either inaccurate or insignificant." *Id.* "Once the defendant introduces evidence satisfying his burden of production, the trier of fact then must consider the evidence introduced

---

[1] The NCAA contends that these individual issues relate to the NCAA's waiver process, or how much each class member prepared for the SAT, etc. These alleged defenses have nothing to do with whether Proposition 16 is intentionally discriminatory. Indeed, because they are separate and distinct from the liability questions Plaintiffs seek to certify, this court or another can pass on the propriety of the NCAA's alleged defenses.

by both sides to determine whether the plaintiffs have established by a preponderance of the evidence that the defendant engaged in a pattern or practice of intentional discrimination." *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 159 (2d Cir. 2001), *cert. denied*, 535 U.S. 95 (2002)(*citing Teamsters*, 431 U.S. at 336).

If the plaintiffs are successful in proving a pattern or practice of discrimination, the defendant may still avoid liability for individual relief during the remedial phase by proving that the particular plaintiff would have been subject to the same treatment even absent the discriminatory policy. Simply put, the defendant can avoid liability by proving that it did not discriminate against that particular class member. *Teamsters*, 431 U.S. at 362.

Similarly, as to the Rehabilitation Act, any analysis of the reasonableness of the NCAA's alleged accommodations of student-athletes' dyslexia must be undertaken during the individual damage determinations of individual class members. The NCAA's argument that a reasonable accommodation analysis is part of Plaintiffs' case in chief does not fit here, where Ms. Pryor only seeks the certification of a liability class under the Rehabilitation Act.

To be sure, when courts have divided Rehabilitation Act and Americans with Disabilities Act ("ADA") classes into liability and damages classes, they have relegated any reasonable accommodation analysis to the secondary determination of individualized damages. *Bates v. United Parcel Service*, 204 F.R.D. 440, 448-49 (N.D. Cal. 2001); *Siddiqi v. Regents of the University of California*, 2000 WL 33190435, No. 99-0791, at *10-11 (N.D. Cal. Sept. 6, 2000) (bifurcating trial of Rehabilitation Act and ADA classes into a first phase for injunctive and declaratory relief based on disparate impact and a second phase for damages based on failure to accommodate). In *Bates*, the court granted certification of an ADA class and bifurcation of the trial. The *Bates* court noted that the plaintiffs' allegation of liability was based on the

defendant's pattern or practice of discrimination and was not based on the defendant's failure to make particular reasonable accommodations for individual plaintiffs. The court held that the reasonable accommodation analysis, as well as the individualized question of damages, would be reserved for the damages part of the trial. *Bates*, 204 F.R.D. at 449.

> [The defendant] is simply mistaken when it argues that the evidence in the liability phase 'must include' evidence of 'each individual's need for accommodation, considering his or her particular limitations and essential job functions, what accommodations he or she was offered and how they were inadequate, if at all, what other reasonable accommodation was available, and the additional evidence of intent relevant to a determination of punitive damages.' ... Such evidence is certainly necessary to evaluate damages, but it is not required to determine liability to the class.

*Id.* The same is true of the Rehabilitation Act claims in this matter.

Here, as to the liability questions Plaintiffs seek to certify, evidence applicable to the entire class will be offered, including but not limited to statistical evidence, admissions from the NCAA and expert testimony. The liability questions posed in those limited classes do not require individualized proof and are separate and apart from any affirmative defense the NCAA might offer to deny liability to individual class members in a later phase or in individual trials. Thus, severance is not only appropriate; it will present a superior means of adjudicating these claims. This is so because a central issue in each putative class member's respective claim is whether Proposition 16 is intentionally discriminatory. This overarching question can be answered in one proceeding before this Court without passing on individual issues.

### C. Bifurcation via Certification of Liability Classes on the Question of Whether Proposition 16 is Intentionally Discriminatory is the Superior Means of Adjudicating these Claims.

The language and the spirit of the Federal Rules of Civil Procedure encourages trial judges to sever issues where it would facilitate Rule 23's purpose of "achieving economies of time, effort, and expense, and promot[ing] uniformity of decision as to persons similarly

situated" as well as facilitating the overarching goal of Federal Rule of Civil Procedure 1, ensuring a fair and efficient remedy for every wrong. *See Maenner v. St. Paul Fire & Marine Ins. Co.*, 127 F.R.D. 488, 490-491 (W.D. Mich. 1989)("In complex cases with complex issues, justice is best served if issues are separated."); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)("A district court should, of course, ordinarily consider such well-established methods as bifurcating the trial into liability and damages phases before denying class certification."); *Simon*, 200 F.R.D. at 29 (citing *Manual for Complex Litigation* §33.2 (3d ed. 1995) ("[T]he lack of such [legislative] solutions [to mass tort problems] makes innovation and creativity imperative if the aim of the Federal Rules of Civil Procedure, the just speedy, and inexpensive determination of every action, is to be realized.") (internal citations and quotations omitted).

Here, the questions of whether the NCAA's Proposition 16 is intentionally discriminatory under Title VI, § 1981, and the Rehabilitation Act are common to all members of the putative class members. Moreover, those questions do not require individualized proof. Therefore, Rule 23(c)(4)(A) bifurcation will advance the principles behind Rule 23 as it will promote fairness and efficiency by removing the need to prove discrimination over and over again with the same evidence. Indeed, Rule 23(c)(4)(A) grants trial judges the flexibility to structure actions so that the superiority requirement of Rule 23(b)(3) is satisfied. "By bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members." *Simon*, 200 F.R.D. at 30. Superiority depends in large measure upon the manageability of the action pursuant to Rule 23(b)(3)(D), which requires the court to consider the difficulties likely to be encountered in the management of a class action. Here, the economies served in deciding the

overarching questions of whether Proposition 16 is intentionally discriminatory under Title VI, § 1981 and the Rehabilitation Act clearly militates in favor of certification of those issues, even where determination of those issues will not be case dispositive.

Bifurcation via certification of Plaintiffs' proposed liability classes will preserve judicial resources and promote fairness. This is true whether the rest of the case is suitable for class treatment or not. Indeed, even if each member of the class must litigate the remainder of their claims in individual trials, those trials will be markedly shorter because a jury in this action will have already decided the pattern or practice portion of the case – a decision that a jury will have to make for Mr. Spivey and Ms. Pryor in any event. Where, as here, the class action is being used as a means to enforce rights granted in the public interest, courts have adopted the principle that "the interests of justice require that . . . any error, if there is to be one should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)(quoting *Kahan v. Rosensteil*, 424 F.2d 161, 169 (3d Cir. 1979); *see also Jenkins v.Raymark Indus., Inc.*, 782 F.2d 468, 473-474 (5th Cir. 1986)(affirming trial judge's bifurcation of punitive and actual damages pursuant to Rule 23(c)(4)(A) in asbestos class action and noting that "[n]ecessity requires us to change and invent"); *In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456, 461 (D. Wyo. 1995) (partial certification in class action brought by consumers against manufacturer finding that "Fed. R. Civ. P. 23(c)(4)(A) [is] a highly efficient way to preserve both judicial economy and the rights of the parties in the case").

**D. Certification of Plaintiffs' Liability Classes Will Not Offend The Seventh Amendment's Reexamination Clause.**

"The Seventh Amendment prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n. 5 (3d Cir. 1997). As early as 1931, the Supreme

Court expressly held that the Seventh Amendment does not always require the unitary trial of a cause of action. *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 498 (1931). In *Gasoline Products*, the First Circuit set aside in part the verdict on a contract counterclaim because the trial court had improperly instructed the jury on damages. 283 U.S. at 500. The counterclaiming defendant, Gasoline Products Company, sought review by the Court, arguing that limiting a new trial to damages and withdrawing from the second jury's consideration the issue of liability on the contract would violate the Reexamination Clause of the Seventh Amendment. *See id.*

While the Supreme Court rejected the argument that a verdict cannot be set aside in part, and held that the Seventh Amendment does not always require unitary trial of a cause of action, it nonetheless refused to permit a retrial of the damage issue alone, reasoning that the damage issue in that case was not separable from the liability issue. The Court noted that "[h]ere the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without **confusion** and **uncertainty**." *See id. at 500* (emphasis added).

The Court's holding is a tacit acknowledgment that **different issues** can be submitted to different juries as long as they are not presented in a way that causes juror confusion or uncertainty, and that acknowledgment remains a guiding principle in current Reexamination Clause jurisprudence. *See In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir 1988) (The Seventh Amendment is not violated where the bifurcated issue is adaptable to a separate trial without creating jury confusion and uncertainty amounting to the denial of a fair trial.); *McElroy v. Arkansas Log Homes, Inc.,* No. 82-1642-C, 1989 WL 18755 (D. Kansas Feb. 13, 1989).

Here, the questions Plaintiffs seek to certify are not inextricably intertwined with the NCAA's affirmative defenses, causation, or damages. On the contrary, the questions of whether Proposition 16 intentionally discriminates against African-American student-athletes or dyslexic student-athletes are stand alone questions proven with evidence common to the class. Hence, different issues will be presented to different juries. Moreover, the Supreme Court's reasoning in *Gasoline Products* demonstrates that "the trial judge can alleviate any 'confusion' or 'uncertainty' by carefully instructing the jury on the proper scope of its inquiry and by employing trial management tools such as the special verdict to avoid Seventh Amendment concerns." *Simon*, 200 F.R.D. at 37.

In the instant case, certifying Plaintiffs' proposed liability classes will not offend the Seventh Amendment's Reexamination Clause and individual questions relating to injury and actual compensatory damages can be reserved for later jury trials. *See* Fed. R. Civ. P. 23(c)(4)(A) advisory committee's notes (1966) ("For example, in a fraud or similar case the action may retain its class character only through the adjudication of liability to the class [accomplished through bifurcation under R. 23(c)(4)(A)]; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."); *Simon*, 200 F.R.D. at 30 (citing *Manual for Complex Litigation*, *supra*, §30.17 n.703 (suggesting that the separation of common liability issues from individual issues "appears to have been the intention of the drafters of [Rule 23(c)(4)(A) ]")).

**1. The Availability of Punitive Damages does not Defeat Certification of Plaintiffs' Liability Classes.**

The NCAA argues that Plaintiffs' requested certification would run afoul of the Seventh Amendment because of the availability of punitive damages. It opines that the availability of such damages will require a separate jury to reexamine facts determined by the

jury that determines the liability class issues. This argument's assumption puts the proverbial rabbit in the hat. Contrary to the NCAA's assumption, the first jury can determine, based upon the evidence of pattern or practice discrimination proffered by Plaintiffs, whether punitive damages should be levied against the NCAA without determining the amount of punitive damages to be awarded, leaving the separate question of the amount of the punitive damages for a later jury. In that instance, the second jury would determine the amount of punitive damages to which each Plaintiff was entitled, along with a determination of the amount of compensatory damages due that particular Plaintiff, after receiving the necessary instructions from the Court regarding the first jury's findings. Of course, in the unlikely event that the NCAA is able to avoid liability with regard to a particular Plaintiff based upon some affirmative defense (*i.e.*, that the same action would have been taken against the particular Plaintiff in the absence of the discriminatory policy), no damages determinations would be made at all with regard to that particular Plaintiff. This procedure would eliminate any possibility of reexamination by a later jury of an issue already decided by the jury that hears the claims of the liability classes.

Alternatively, courts have held that punitive damages may be assessed on a classwide basis. *Palmer v. Combined Ins. Co. of America*, No. 02-C-1764, 2003 WL 22003358 (N.D. Ill. August 25, 2003); *Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994). In so holding, they have noted that individualized assessments are not necessary when it comes to punitive damages because such damages "are intended to punish the wrongdoer, as opposed to compensating the injured victim." *Palmer*, 2003 WL 22003358 at *1; *Day*, 851 F. Supp. at 884-885 ("Punitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence")(quoting *Int'l Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 48 (1979)).

These cases have found that punitive damages are suitable for class action treatment. Using the model set forth in these cases, the jury hearing the issues raised by the liability classes could easily determine whether the NCAA's conduct warranted punitive damages, and also determine the amount of punitive damages to be awarded, which amount would be divided on a classwide, pro-rata basis among the Plaintiffs that ultimately prevail on damages against the NCAA. Also, this procedure would ensure that certification of Plaintiffs' liability classes does not offend the Seventh Amendment.

## II. CONCLUSION

Simply put, certification under Rule 23 is not "an all-or-nothing proposition," and it does not require certification of all causes of action asserted in a single pleading. *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 544 (D. N.J. 1999). Rather, Rule 23(c)(4)(A) permits differential treatment of claims. *Stephenson v. Bell Atlantic Corp*, 177 F.R.D. 279, 289 n.4 (D. N.J. 1997). The proof required to prove that Proposition 16 is intentionally discriminatory in Plaintiffs' individual claims under Title VI, § 1981 and the Rehabilitation Act is identical to the proof required by the putative Classes. As to the Title VI and § 1981 Counts, Plaintiffs contend that the NCAA adopted and or continues to enforce Proposition 16 because it discriminates against African-American student-athletes, not in spite of that fact. This common issue does not require individualized proof but rather, as in the *Cureton* matter, proof that Proposition 16 is discriminatory will be sufficient to prove that Proposition 16 is intentionally discriminatory – the focus is on the NCAA's conduct in this context, not on Plaintiffs'. Members of the putative liability classes share the same common questions under Title VI and § 1981, and those common questions are answered with the same evidence.

Through the Rehabilitation Act claim, Ms. Pryor seeks to prove that Proposition 16 discriminates against her as a student-athlete with dyslexia because dyslexic students cannot be properly measured by the SAT, yet the NCAA continues to use this yardstick to deny eligibility to otherwise qualified dyslexic student-athletes. The Rehabilitation Act liability class will likewise press the same common issue – with the question of whether Proposition 16 intentionally screens out dyslexic student-athletes being identical.

Moreover, class treatment of these issues will advance "the efficiency and economy of litigation which is the principal purpose of the [class action] procedure." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)). Finally, certification will not offend the Seventh Amendment. Plaintiffs have met the requirements set forth in Rules 23(a), (b)(3) and (c)(4)(A), and class certification represents the fairest and most efficient method of adjudicating these claims. Therefore, Plaintiffs' request for certification of liability classes with regard to Title VI, § 1981, and the Rehabilitation Act should be granted.

Respectfully submitted,

MW400

André L. Dennis
Danielle Banks
Megan P. Willoughby
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Megan P. Willoughby, hereby certify that on this 7th day of January, 2004, I caused a true and correct copy of the foregoing Plaintiffs' Response to the NCAA's Sur-Reply Memorandum on Class Certification to be served upon the following by hand delivery:

David P. Bruton, Esquire
Michael W. McTigue, Jr., Esquire
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

MW400________________________
Megan P. Willoughby